MURRAY v. RAY.

(Circuit Court of Appeals, Ninth Circuit. July 1, 1918. Rehearing Denied October 14, 1918.)

No. 3126.

1. BANKRUPTCY ⊙⟶303(3)—CONVEYANCE IN FRAUD OF CREDITORS—EVIDENCE.
In suit by trustee of estate of one adjudged a bankrupt on June 15th, to cancel a deed made by the bankrupt to defendant on March 5th pre- ceding, evidence *held* to sustain finding that conveyance constituted a gift, which was voidable at suit of trustee.

2. TRUSTS ⊙⟶30½(1)—WHAT CONSTITUTES—CONDITIONAL GIFT.
The giving of a gift with the hope that the donee will at some time return it or its value does not operate to create a trust, or charge the donee with a trusteeship.

Appeal from the District Court of the United States for the East- ern Division of the District of Idaho; Frank S. Dietrich, Judge.

Suit by H. E. Ray, as trustee of the estate of Alec Murray, bank- rupt, against James A. Murray. Decree for plaintiff, and defendant appeals. Affirmed.

Alec Murray, of whose estate in bankruptcy the appellee is the trustee, was adjudged a bankrupt on June 15, 1917. Thereafter the trustee brought a suit against the appellant to cancel a deed whereby, for a recited considera- tion of $1, the bankrupt on March 5, 1917, conveyed to the appellant land in the city of Pocatello, Idaho, on which was a building known as the "Audi- torium"; the trustee alleging in the bill that the transfer of said real es- tate was made with the intention to hinder, delay, and defraud the creditors of the bankrupt, whose estate was insufficient to meet the claims of his cred- itors—the unsecured claims, according to the schedule, amounting to the sum of about $59,000, of which $40,000 was owing to the appellant, while the assets were about $2,500. The appellant answered, and alleged that the true and actual consideration for the deed was the fulfillment of a trust placed in the said bankrupt by the appellant a number of years prior to and preced- ing the date of the deed, by which trust the appellant and the bankrupt stipu- lated and agreed that, in consideration of the conveyance of said property by the appellant to the bankrupt, the latter was to have and to hold the same in trust for the appellant, to manage the same as the appellant's agent, and to render to the appellant all rents and profits therefrom, except a portion which he was to reserve as compensation for services and reimbursement for expenses, and that by the said trust agreement it was provided that the bank-

⊙⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

rupt was to reconvey the property to the appellant at any time upon the latter's request, or on his own volition, if he desired to terminate the trust; that the appellant received no consideration for the transfer, and that the same was made solely for said trust purposes. The court below, upon the evidence, found that there was no agreement by which the property was impressed with a trust, and that the deed from the appellant to the bankrupt constituted a gift. The decree directed that the appellant execute a conveyance to the appellee.

James E. Murray, J. Bruce Kremer, L. P. Sanders, and Alf. C. Kremer, all of Butte, Mont., for appellant.

J. M. Stevens, of Pocatello, Idaho, for appellee.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). [1] The appeal presents the question whether the evidence is sufficient to sustain the finding and the decree of the court below. The trust agreement which was set forth in the appellant's answer herein is but feebly supported by testimony. The testimony of the appellant is thus reviewed in the opinion of the court below:

"After stating that he had no particular agreement with the bankrupt at the time the property was conveyed, and that there was nothing said about holding the title in trust, only some general understanding, he was asked by his counsel the question, 'At the time you conveyed it (the property) to him (the bankrupt), did you have any understanding that he was to convey it to you, or to any one else you might designate?' To which he replied, 'No; no agreement.' Then to the extremely leading question, 'You had an oral agreement, did you not?' he responded, 'Yes, sir; I did not think we needed anything more.' And upon cross-examination he stated that there was no distinct agreement, just a general understanding. He does not testify as to what, if anything, he said, or what, if anything, the bankrupt said, nor does he explain how or why he got such a general understanding, or attempt to give any reason for having the transfer made by the Monidah Trust Company."

There was no other testimony on the subject, except that of James E. Murray, a nephew of and attorney for the appellant, who testified that the appellant said:

"He would convey the property to him (the bankrupt), and it should stand in his name; but, at any time he wanted the property reconveyed, he would expect him to do so."

It was shown that in 1906 the appellant purchased the property in controversy at sheriff's sale, and caused the title to be taken in the name of E. L. Chapman, who was his employé; that Chapman thereafter conveyed the same to the Monidah Trust, a corporation, of which substantially all the stock was owned by the appellant; that on January 5, 1912, at the appellant's instance, the Monidah Trust conveyed the property to the bankrupt by a deed which was recorded on June 8, 1912; that on June 12, 1912, the bankrupt conveyed to George Winter an undivided one-half interest in the property, which interest Winter reconveyed to the bankrupt on December 29, 1914; and that on March 5, 1917, the bankrupt conveyed the property to the appellant. Prior to the first conveyance to the bankrupt the appellant, who owned the Pocatello waterworks, and conducted the same under the name of the Pocatello Water Company, was the defendant in a suit brought

by the city of Pocatello to compel him to appoint two commissioners under the provisions of section 2839, Revised Codes of Idaho of 1909, to confer and act with two commissioners appointed by the city to fix and determine rates to be charged for water.. City of Pocatello v. Murray, 21 Idaho, 180, 120 Pac. 812; Murray v. Pocatello, 226 U. S. 318, 33 Sup. Ct. 107, 57 L. Ed. 239; City of Pocatello v. Murray, 23 Idaho, 444, 130 Pac. 383, Ann. Cas. 1914C, 1050. To qualify one to act as a commissioner under the statute, it was necessary that he should be a taxpayer of the city. Winter and the bankrupt became taxpayers through the conveyance to them of the property in controversy. The appellant made them his commissioners to act with the commissioners appointed by the city. The fact that they were employés of the water company was held not to disqualify them. City of Pocatello v. Murray, 23 Idaho, 444, 130 Pac. 383, Ann. Cas. 1914C, 1050.

The case in which that was held was a proceeding brought to require the appellant herein to show cause why he should not be punished for contempt for his failure and neglect to appoint commissioners, as required by a prior peremptory writ. The appellant, in his answer to the order to show cause, alleged that Winter and the bankrupt were residents and taxpayers of the city of Pocatello, and that they were joint owners in fee simple of the property so conveyed, and his answer was accompanied by the affidavit of the bankrupt, in which the latter stated that he owned an undivided one-half interest in the Auditorium property in fee simple, and that he had paid the taxes thereon assessed for the year 1912. A similar affidavit, made by Winter, accompanied the answer. The court in that proceeding found that the facts so alleged in the answer were "clearly supported by the evidence."

The appellant points to the fact that the laws of Idaho contain no requirement that a taxpayer shall be the owner of a perfect, unincumbered title, or that he must be the owner of the equitable, as well as the legal, estate. Conceding this to be true, it does not meet the situation which the case presents. Here the appellant and the bankrupt have by answer and by affidavit deposed that the conveyance to the bankrupt was a grant of an estate in fee simple, an estate which is the highest known to the law, and which necessarily implies absolute dominion over the land. Coexistent with the fee-simple estate there could be no equitable estate. There was no evidence that the bankrupt ever agreed to convey the property to the appellant, or that he acknowledged that he was holding the same in trust for the appellant. Such a construction of the transaction is expressly negatived by the bankrupt's affidavit in the suit in the state court, and the appellant's answer to the contempt proceeding; and it is significant that the bankrupt was not called to testify in the present case, and that no reason or excuse was offered for the appellant's failure to call him as a witness.

[2] In view of all the evidence, we think the court below committed no error in finding that the conveyance to the bankrupt was a gift. As the court said:

"It still remains true that he gave the property to the bankrupt without any reservations, conditions, or qualifications. It is immaterial that he hoped to get the property back. The giving of a gift, with the hope that the donee will at some time return it, or its value, does not operate to create a trust or charge the donee with a trusteeship. For his own purposes the defendant was under the necessity of making an absolute transfer. To have put the property in trust would have been futile."

The conveyance by the bankrupt to the appellant having been made without consideration and as a gift, it was voidable at the suit of the trustee in bankruptcy.

The decree is affirmed.